SEAN PATRICK FLANAGAN, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 19059

SEAN PATRICK FLANAGAN, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 19248

March 30, 1989                    771 P.2d 588

*Morgan D. Harris,* Public Defender, and *J. Daniel Hastings* and *Michael L. Miller,* Deputy Public Defenders, Clark County, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex A. Bell,* District Attorney and *James Tufteland* and *Daniel M. Seaton,* Deputy District Attorneys, Clark County, for Respondent.

## OPINION

*Per Curiam:*[1]

Appellant Sean Patrick Flanagan pleaded guilty to two counts of first degree murder and was twice sentenced to death. Although Flanagan's counsel filed appeals of his sentences, Flanagan wrote to this court requesting that we waive both appeals. This court ordered the parties to file points and authorities to resolve the question of whether Flanagan validly waived appellate review. We conclude that Flanagan's waiver was valid and that his death sentences conform with Nevada law.

On October 13, 1987, the City of Orange, California police stopped Flanagan for jaywalking. Subsequently, Flanagan voluntarily confessed to committing two murders in Las Vegas. According to Flanagan, he met James Lewandowski in Las Vegas in late September 1987. Flanagan became enraged when Lewandowski subsequently made homosexual overtures toward him. On October 5, 1987, Flanagan met Lewandowski at Foxy's Casino in Las Vegas and planned to kill him. Flanagan lured Lewandowski back to his (Flanagan's) motel room. Between 4:00 a.m. and 6:00 a.m. on October 6, 1987 while the two were sitting on Flanagan's bed, Flanagan suddenly lunged for Lewandowski, put him into a "head lock," and strangled him. Flanagan released Lewandowski after several minutes, and saw that although unconscious, Lewandowski was breathing and his heart was still beating. Flanagan struck Lewandowski in the throat with his fist, rolled Lewandowski's body off the bed onto the floor, and pushed a mattress on top of the body.

Later that day, Flanagan rented his motel room for another day and went out to buy a knife and garbage bags. During the night of October 6 and the morning of October 7, Flanagan systematically dismembered Lewandowski's body. Flanagan cut off Lewandowski's head, arms and legs and chopped his torso in half. Flanagan placed the various pieces in garbage bags, which he later deposited into dumpsters behind an apartment complex near his motel.

Flanagan told the police that at 9:00 p.m., October 10, 1987, Albert Duggins offered him a ride while Flanagan was walking on Sahara Avenue in Las Vegas. Duggins invited him for drinks at

---

[1]Although Docket No. 19059 and Docket No. 19248 were argued separately, we have consolidated the two cases for purposes of disposition.

the Sahara Hotel. Flanagan accepted and according to Flanagan, within fifteen to twenty minutes planned to kill Duggins because he believed Duggins to be homosexual. After two or three hours the two left the hotel and went to Duggins' apartment complex, where they spent some time at the pool area. At approximately 3:00 or 4:00 a.m., October 11, 1987, Flanagan asked Duggins to take him back to Sahara Avenue. Duggins and Flanagan entered Duggins' car. When Duggins made ready to start the car, Flanagan told Duggins that Duggins "was going to die because he (Duggins) was a faggot." Flanagan then grabbed Duggins by the neck, and strangled him. Flanagan continued to speak to Duggins as he choked him, telling him that he did not deserve to live and that his "whole kind should be exterminated." Flanagan drove Duggins' car to a remote area, took Duggins' clothes and wallet, and disposed of Duggins' body.

The State prosecuted Flanagan separately for the two murders. Representing himself, Flanagan pleaded guilty to the premeditated murder of Albert Duggins.[2] A penalty hearing was held before a three-judge panel. Although standby counsel requested the court's permission to present mitigating evidence, pursuant to Flanagan's wishes, the court refused. Flanagan freely admitted that he felt no remorse, that he took pleasure in killing, and that he might kill again.

The panel found three aggravating circumstances and no mitigating circumstances. See NRS 200.033; NRS 200.035. The panel found (1) that the murder was committed while Flanagan was engaged in the commission of or in an attempt to commit robbery, (2) that Flanagan had previously been convicted of a felony involving the use or threat of violence to another (battery by a prisoner), and (3) that the murder of Albert Duggins involved torture, depravity of mind, or mutilation of the victim. The panel noted that the aggravating circumstance of torture, depravity of mind, or the mutilation of the victim was itself sufficient to justify the death penalty. Accordingly, the panel sentenced Flanagan to death by lethal injection. The panel subsequently denied Flanagan's motion for a new penalty hearing.

Flanagan, again representing himself, also pleaded guilty to the premeditated murder of James Lewandowski. Appointed counsel represented Flanagan at the penalty hearing before a three-judge panel.[3] The panel found four aggravating circumstances and only one mitigating circumstance. See NRS 200.033;

---

[2]Flanagan also pleaded guilty to grand larceny auto and robbery. The district court sentenced Flanagan to ten years imprisonment on each offense.

[3]Although Flanagan proceeded in proper person, Flanagan ultimately requested assistance from standby counsel.

NRS 200.035. The panel found (1) that the murder was committed by a person who was previously convicted of a felony involving the use of violence to another (battery by a prisoner), (2) that the murder was committed by a person who was previously convicted of another murder, (3) that the murder involved depravity of mind and (4) that the murder involved mutilation of the victim. As a mitigating circumstance, the panel found that Flanagan had no significant history of prior criminal activity until shortly before the commission of the murder. The panel ruled that this lone mitigating circumstance did not outweigh any of the aggravating circumstances.

Flanagan's appointed counsel timely filed notices of appeal. Subsequent to the filing of these notices of appeal, yet prior to oral argument, Flanagan sent a letter to this court, in which he requested that we accept his waiver of the appeals in both cases and that the state execute him. On November 22, 1988, this court entered an order directing the parties to file points and authorities addressing the question of whether Flanagan had made a valid waiver of his right to this court's review of his death sentences.

Flanagan's counsel contends that Flanagan's waiver was untimely and therefore invalid. Specifically, counsel argues that the waiver was made after the 30-day period for waiver provided in NRS 177.055(1).[4] Counsel relies upon a portion of that statute, which provides that "an appeal is deemed automatically taken by the defendant without any action by him or his counsel, unless the defendant or his counsel affirmatively waives the appeal within thirty days after the rendition of the judgment."

Counsel's reliance is misplaced. Counsel overlooks the first clause of NRS 177.055(1) which limits the applicability of that statute to actions in which the accused enters a plea of not guilty or not guilty by reason of insanity. Because Flanagan pleaded guilty below, the 30-day requirement in NRS 177.055(1) is inapposite, and Flanagan's waiver need only be "intelligently made and with full comprehension of its ramifications" to be valid. Cole v. State, 101 Nev. 585, 588, 707 P.2d 545, 547 (1985). *See* Johnson v. Zerbst, 304 U.S. 458, 464-65 (1938).

After careful review of the record, we are convinced that Flanagan made a valid waiver of his appeals. Based on two psychiatric reports, Flanagan was found competent to assist

---

[4]NRS 177.055(1) provides:

    1. When upon a plea of not guilty or not guilty by reason of insanity a judgment of death is entered, an appeal is deemed automatically taken by the defendant without any action by him or his counsel, unless the defendant or his counsel affirmatively waives the appeal within 30 days after the rendition of the judgment.

counsel, aid in his own defense, understand the nature of the charges against him, and waive his preliminary hearing. At the time of the penalty hearing for the murder of Albert Duggins, Flanagan was twenty-seven years old. He had served in the Marine Corps for almost four years. Flanagan appears to be an intelligent man who understood what transpired at the proceedings below, and functioned satisfactorily while representing himself. Flanagan's letter to this court demonstrated that he fully comprehended the ramifications of his waiver. Flanagan repeatedly asserted that he wished to forego his appeals and that the State carry out the death penalty. Under these circumstances, it is clear that Flanagan validly waived his appeals. *See Cole v. State,* 101 Nev. at 588, 707 P.2d at 547. Therefore, we need not consider the contentions raised by Flanagan's appointed counsel.

Finding that Flanagan effectively waived his appeals is not, however, the end of our inquiry. NRS 177.055(2)[5] requires that this court determine whether the evidence presented supports the finding of an aggravating circumstance or circumstances, whether the sentence of death was imposed under the influence of passion, prejudice or any arbitrary factor, and whether the sentence of death is excessive, considering both the crime and the defendant.

At Flanagan's penalty hearing for the murder of Lewandowski, the panel found as an aggravating circumstance that the murder was committed by a person previously convicted of a felony involving the use of violence to another (battery by a prisoner). The State offered the testimony of James Dingus, a corrections officer at the Clark County Detention Center, who stated that on October 31, 1987, Flanagan battered him. The State also offered a copy of the judgment of conviction for this offense. Thus, sufficient evidence supports the finding of this aggravating circumstance. The State also introduced evidence (including a certified copy of the judgment of conviction) that appellant killed Albert Duggins. Therefore, sufficient evidence supports the finding of the aggravating circumstance that appellant had previously been convicted of murder.

---

[5]NRS 177.055(2) provides:

2. Whether or not the defendant or his counsel affirmatively waives the appeal, the sentence must be reviewed on the record by the supreme court, which shall consider, in a single proceeding if an appeal is taken:

(a) Any errors enumerated by way of appeal;

(b) Whether the evidence supports the finding of an aggravating circumstance or circumstances;

(c) Whether the sentence of death was imposed under the influence of passion, prejudice or any arbitrary factor; and

(d) Whether the sentence of death is excessive, considering both the crime and the defendant.

The panel found that the Lewandowski murder involved the aggravating circumstance of depravity of mind. Flanagan attempted to strangle Lewandowski, and then struck Lewandowski in the Adam's apple with his fist when he found he was still alive. These repeated and varied attempts to kill over a period of time demonstrate depravity of mind. *See* Rogers v. State, 101 Nev. 457, 468, 705 P.2d 664, 671-72 (1985), *cert. denied,* 476 U.S. 1130 (1986). The circumstances of Lewandowski's strangulation murder also support a finding of depravity of mind. *See* Neuschafer v. State, 101 Nev. 331, 337, 705 P.2d 609, 613 (1985). The subsequent dismemberment of the victim's body further supports a finding of depravity of mind. Cavanaugh v. State, 102 Nev. 478, 487, 729 P.2d 481, 486 (1986). Sufficient evidence supports the finding of the aggravating circumstance of depravity of mind.

The panel also found as an aggravating circumstance that the murder of Lewandowski involved mutilation of the victim. We have not previously decided and we need not now decide if dismemberment of a corpse is mutilation within the meaning of NRS 200.033(8). *Id.* Although the panel found as a mitigating circumstance that Flanagan had no significant history of prior criminal activity, it concluded that this did not outweigh any one of the aggravating circumstances. There was sufficient evidence to support the finding of the other aggravating circumstances. Thus, even assuming *arguendo* that the panel erred when it concluded that Lewandowski's murder involved mutilation, the error was harmless.

At the penalty hearing for the murder of Duggins, the panel found as an aggravating circumstance that Flanagan committed the murder while engaged in the commission of or in an attempt to commit a robbery. Flanagan admitted that he had formed the intent to take Duggins' car and personal effects before killing Duggins. Therefore, the record contains sufficient evidence from which the panel could find this aggravating circumstance.

Further, the panel found that the Duggins' murder involved the aggravating circumstance of depravity of mind. When asked if he killed Duggins quickly or let him linger on, Flanagan replied that while he did not try to torture Duggins, he was in no hurry to kill him. Flanagan continued to speak to Duggins as he choked him, telling Duggins that he was going to die because he (Duggins) was homosexual. Flanagan told the panel that he felt no remorse for either murder and felt no sympathy for his victims. Flanagan

142

told the panel that he would kill any inmate who made homosexual advances towards him or suggested sexual relations. Flanagan admittedly took pleasure in the murder of Duggins simply because he thought Duggins was homosexual. Therefore, the record contains sufficient evidence from which the panel could find the aggravating circumstance of depravity of mind.

The sentencing panel found, as an aggravating circumstance, that Flanagan had previously been convicted of a crime involving the use of violence to another, i.e., battery by a prisoner. The State introduced into evidence a certified copy of the judgment of conviction for the battery by a prisoner offense. As discussed above, sufficient evidence supports the finding of this aggravating circumstance.

The record reveals that the sentences of death were not imposed under the influence of passion, prejudice, or any arbitrary factor. There is no evidence that either panel was influenced by anything but the facts presented to them. In view of the circumstances of the crimes and Flanagan's admitted propensity for violence, the sentences of death are not excessive. Flanagan brutally murdered two men simply because he believed they were homosexual. We affirm the judgment of the district court.